**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION**

| | | |
|---|---|---|
| *In re* | : | Chapter 11 |
| | : | |
| MILLS FORESTRY SERVICE, LLC, | : | Case No. 20-30058-SDB |
| | : | (Jointly-Administered) |
| Debtor. | : | |
| _____ | : | |
| *In re:* | : | |
| | : | |
| SAMMY CLYDE MILLS, III, | : | |
| | : | |
| Debtor. | : | |
| _____ | : | |
| | : | |
| CANAL WOOD, LLC, | : | Adversary Proceeding |
| | : | Case No.:_____ |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| MILLS FORESTRY SERVICE, LLC, | : | |
| SAMMY C. MILLS, III | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT TO DETERMINE DISCHARGEABILITY

COMES NOW Canal Wood, LLC ("Canal") and pursuant to section 543 of Chapter 11 of

Title 11 of the United States Code (the "Bankruptcy Code"), files this Complaint to Determine

Dischargeability against Mills Forestry Service, LLC ("MFS") and Sammy C. Mills, III ("Mr.

Mills") (collectively, the "Debtors") and shows this Court the following:

## JURISDICTION AND VENUE

1.

This Court has subject-matter jurisdiction over this adversary proceeding, which arises under or relates to a case under Title 11 of the United States Code ("Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of Georgia, pursuant to 28 U.S.C. §§ 157, 1334 and 11 U.S.C. §§ 105, 523.

2.

This adversary proceeding is a "core" proceeding to be heard and determined by the Bankruptcy Court pursuant to 28 U.S.C. §§ 157(b)(2)(I), (J).

3.

The Debtors have remained in possession and control of their property and have continued to operate their businesses as debtors-in-possession under §§ 1107 and 1108 of the Bankruptcy Code.

4.

Venue is proper in this Court pursuant to 28 U.S.C. §1409.

## PARTIES AND FACTS

5.

Canal Wood is a Georgia limited liability company.

6.

MFS is a Georgia limited liability company with a principal place of business of 235 Corinth Church Road, Adrian, GA 31002. MFS may be served through its attorney of record, David L. Bury, Jr., Fickling & Co. Building, Suite 800, 577 Mulberry Street, Macon, GA 31201.

7.

Mr. Mills is a Georgia resident with a principal residence of 92 Mildred Smith Road, Kite, GA 31049. Mr. Mills may be served through its attorney of record, David L. Bury, Jr., Fickling & Co. Building, Suite 800, 577 Mulberry Street, Macon, GA 31201

8.

Canal is a creditor in the Case as evidenced by its proofs of claim numbers 20 and 25 in the bankruptcy cases of MFS and Mr, Mills, respectively.

9.

On March 7, 2020 (the "Petition Date"), Debtors filed for relief under chapter 11 of Bankruptcy Code.

10.

Debtors' bankruptcy cases are being jointly administered under Case No. 20-30058-SDB.

11.

On May 28, 2019, Canal extended to MFS and Mr. Mills a loan in the amount of $100,000 ("Loan #1"). Canal and Mr. Mills executed on May 28, 2019 in favor of Canal a Business Loan, Promissory Note and Security Agreement ("Note #1") in the amount of $100,000. A copy of Note #1 is attached hereto as Exhibit "A".

3

12.

As security for Note #1, MFS granted Canal a security interest in, among other things, a Tigercat 630C Skidder, S/N 6302519 (the "Collateral").   Canal properly perfected its security interest by filing the financing statements attached hereto as Exhibit "B".

13.

In Note #1, MFS represented to Canal that MFS owned the Collateral.

14.

Canal materially relied on this representation when Canal made its decision to extend the loan evidenced by Note #1.

15.

Subsequently, on March 2, 2020, mere five days before Debtors filed for bankruptcy, MFS and Mr. Mills executed in favor of Canal another Business Loan, Promissory Note and Security Agreement ("Note #2") in the amount of $58,099.39.   A copy of Note #2 is attached hereto as Exhibit "C".

16.

As security for Note #2, MFS granted Canal a security interest again in, among other things, the Collateral.   Canal properly perfected its security interest. See Exhibit "B".

17.

In Note #2, MFS and Mr. Mills again represented to Canal that MFS owned the Collateral.

18.

Canal materially relied on this representation when it made its decision to extend the loan evidenced by Note #2.

19.

Canal is a creditor in the Case as evidenced by its proofs of claim numbers 20 and 25 in the bankruptcy cases of MFS and Mr, Mills, respectively.

20.

As of the Petition Date, Debtors are indebted to Canal in the amount of $119, 715.14.

21.

During the meeting of creditors, Mr. Mills testifying under oath on behalf of MFS and himself stated that the Collateral is not owned by MFS.

22.

Mr. Mills testified under oath that the Collateral is owned by Daniel Anderson.

23.

Mr. Mills also testified that MFS pledged the Collateral to Canal even though it was owned by someone else.

24.

Canal seeks a determination of Debtors' dischargeability of an obligation to Canal under 11 U.S.C. § 523(a)(2)(A) and/or (6).

## BASIS FOR OBJECTING TO DISCHARGE UNDER 11 U.S.C. § 523(a)(2)(A)

### 25.

Canal alleges and incorporates all paragraphs and allegations made above as if fully restated herein.

### 26.

Section 523(a)(2)(A) provides that a debtor is not discharged from any debt to the extent the money was obtained by false pretenses, false representations, or actual fraud.

### 27.

Mr. Mills, and Mr. Mills, individually, falsely represented to Canal the ownership of the Collateral to induce Canal to extend the loans evidenced by the Notes.

### 28.

Canal relied on the false representations when Canal extended the loans evidenced by the Notes.

### 29.

As a result of Debtors' actions described above and perhaps other actions not yet discovered constitute the obtaining of money, property, services, or an extension, renewal or refinancing of credit obtained by false pretenses, false representations and actual fraud, and therefore, the injury sustained by Canal are nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## <u>ALTERNATIVE BASIS FOR OBJECTING TO DISCHARGE<br>UNDER 11 U.S.C. § 523(a)(2)(6)</u>

30.

Canal re-alleges and incorporates all paragraphs and allegations made above.

31.

In the alternative, the actions of MFS and Mr. Mills and perhaps other actions not yet discovered, constitute willful and malicious injury and damages to Canal and are likewise nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

**WHEREFORE**, Canal prays this Court:

  a.  That the Court refuse to grant the Debtors a discharge as to Canal's debt pursuant to 11 U.S.C. § 523(a)(2)(A) and/or (a)(6);

  b.  That the Court grant Canal reasonable attorney's fees, costs and expenses of litigation; and

  c.  All relief that the Court deems.

7

Respectfully submitted this 15th day of June 2020.

JAMES-BATES-BRANNAN-GROOVER-LLP

By:     /s/ Doroteya N. Wozniak
        Doroteya N. Wozniak
        Georgia Bar No. 627491
        Michael N. White
        Georgia Bar No. 753633
        3399 Peachtree Road, N.E., Suite 1700
        Atlanta, Georgia 30326
        (404) 997-6020
        (404) 997-6021 (fax)
        dwozniak@jamesbatesllp.com
        mwhite@jamesbatesllp.com

        *Counsel for Plaintiff Canal Wood, LLC*

# EXHIBIT "A"

CANAL WOOD LLC WEST
BUSINESS LOAN, PROMISSORY NOTE AND SECURITY AGREEMENT

Amount of Loan: $ 100,000.00                Date: May 28, 2019                Loan Administrator Brenda H. Whitaker

FOR VALUE RECEIVED, the undersigned maker (hereinafter referred to as "Debtor") (if more than one, jointly and severally), promise(s) to pay to the order of Canal Wood LLC (hereinafter together with any holder or assignee hereof called "Lender"), on demand at Evans, GA (City, State), the amount of $ 100,000.00, together with interest thereon from the date of the note ("Note"), as hereinafter provided on a per annum basis without compounding, calculated on the basis of the actual number of days elapsed over a year of 360 days, at the rate of 12.0 percent (or, if this percent is determined invalid for any reason, then the highest rate allowable by law).

Until payment is made, Debtor agrees to pay said amount in installments of $ 1,921.77 per week, with the first installment being due on the 14th day of June, 2019, and on the same day of each week thereafter, until the full amount is paid with interest at the rate stated above. Debtor covenants and agrees that this instrument is payable on demand and that the interim installment payments herein agreed upon do not alter or affect Lender's right to demand full payment of all principal and interest and other charges due hereunder at any time.

If this debt is paid on demand, it will continue to accrue interest at the above rate until paid in full, and Debtor agrees to pay attorneys' fees of 15% of the amount due hereunder if this debt is placed in the hands of an attorney for collection, and to pay all of the cost of collecting this debt and/or realizing on any security interest in connection herewith.

The term Debtor for the purposes of this Note and Security Agreement includes the undersigned and any other person assigning property to Lender as collateral ("Collateral") for this Note. Debtor hereby grants and assigns to Lender a security interest in the property described below and its proceeds as Collateral for this Note and for any and all other obligations and liabilities of Debtor to Lender, whether due or to become due, direct or contingent, now existing or hereafter arising, and however created or acquired.

DESCRIPTION OF COLLATERAL

John Deere 6210 Tractor, S/N LO631OM246904
1997 John Deere Bulldozer 650G, S/N TO650GW838609
Ford 5610 Tractor, S/N B032448
1999 John Deere 650G Bulldozer, S/N TO650GW304217
1984 John Deere Motor Grader 570, S/N 000306U
Tigercat 60C Skidder, S/N ~~430185~~ G502B519  BHW
2008 John Deere 643J Feller buncher, S/N 621572

The collateral includes and Debtor hereby grants Lender a security interest in any and all goods, equipment, general intangibles, documents, instruments, chattel paper, accounts and property of any and every kind, wherever located, now belonging to or hereafter acquired by the Debtor.

Debtor warrants that the Collateral will be located, or in the case of motor vehicles, garaged at the following address(es) (Debtor's principal place of business):

Debtor warrants that the Collateral is now or will be located at the aforesaid addresses and that the Collateral will not be stored or garaged at another location without written consent of the Lender. Debtor will notify the Lender in writing of the change in the location of any place of business of the Debtor prior to making such a change and the acquisition of any new place of business prior to such acquisition. Only by prior written permission of the Lender may the Collateral be kept on or attached to real estate owned by a third party and at the request of the Lender, Debtor will furnish disclaimer or disclaimers, executed by all persons having an interest in such real estate, of all interest in the Collateral. The Debtor warrants to the Lender that the Debtor owns the Collateral, will not sell it, and has not given anyone else a security interest in the Collateral. The Debtor agrees to pay all taxes against the Collateral and to keep it in good repair.

If the proceeds of this Note are to be used to purchase the Collateral, the Debtor will immediately use the entire proceeds, together with such additional funds of Debtor as may be necessary, to pay the purchase price of the Collateral described above and for no other purpose.

Each party hereto whether maker, principal, surety, guarantor, endorser, or in any other capacity, hereby waives presentment and demand, notice of dishonor, protest and notice of protest, and agrees that no failure or omission by the Lender upon any default to exercise any right or remedy hereby granted to the Lender shall constitute a waiver by the Lender of the rights to exercise any such right or remedy upon any subsequent default. Each agrees that any party or security may be released or substituted or reduced by Lender. The Lender may compromise or receive less than the amount due on any Collateral and may grant any other indulgence to any party without notice to any other party and without affecting his liability.

This agreement shall be governed and construed in accordance with the law of the State of    Georgia   . Each party to this agreement submits to the jurisdiction of courts in the State of Georgia for purposes of any disputes and matters whatsoever arising under, in connection with, or incidental to this agreement. The provisions of this agreement are intended to be severable.

Upon default, Lender shall have the right to make offset up to the amount owed by Debtor hereunder against any account, deposit or reserve which Debtor may have with Lender.

THE UNDERSIGNED WARRANTS THAT THIS DEBT IS NOT BEING INCURRED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

The undersigned has read and received a copy of this Note and Security Agreement, including the Terms and Conditions (appearing on the reverse side or separate pages) which are incorporated herein, and, being of lawful age, hereunto sets hand and seal the day and year above set out, agrees to be bound to the Note and Security Agreement and all its Terms and Conditions.

Signature(s) of Debtor(s)                                                     Address

Sammy C Mills, III, Mills Forestry Service L...

WAIVER

THE UNDERSIGNED HEREBY WAIVES ANY AND ALL RIGHTS TO NOTICE OR A HEARING PRIOR TO SEIZURE OF THE COLLATERAL IN ANY FORECLOSURE, WRIT OF POSSESSION, DETINUE, ATTACHMENT, GARNISHMENT, CLAIM AND DELIVERY OR LIKE ACTION INSTITUTED PURSUANT TO THIS NOTE AND SECURITY AGREEMENT, AND RECOGNIZES AND UNDERSTANDS THAT THIS IS A WAIVER OF HEARING PRIOR TO IMMEDIATE POSSESSION.

IN WITNESS WHEREOF, the Debtor has set his hand and seal the day and year above set out.

In the Presence of (Witness)                                      Signature(s) of Debtor(s)
                                                                 Sammy C Mills, III, Mills Forestry Serv...

This Security Agreement and Waiver of Hearing should be signed by all owners of the Collateral.

#4-GA

## TERMS AND CONDITIONS

1. The Collateral includes all parts, replacements thereof, attachments, accessories, and equipment now or hereafter installed therein or thereto, including all items of the same nature as the above which are to be purchased with the proceeds of this Indebtedness. The Debtor agrees to supply and execute such financing statements, motives, assignments, endorsed certificates of title and such other documentation as may be required by the Lender to perfect the security interest granted herein. Debtor hereby grants to the Lender a power of attorney to execute and file any supplementary documents pertaining to the Collateral described herein as may be required by the Lender to perfect its security interest. Collateral also includes all money and other property now or hereafter held by Lender, on deposit, in reserve, in safekeeping or otherwise for the account of or to the credit of or belonging to Debtor(s), or any of them, in which Debtor(s), or any of them, have any interest, all of which is hereafter termed Collateral.

2. The Debtor agrees to keep the Collateral covered by insurance payable and satisfactory to the Lender, to cover any loss or damage and will provide the Lender with satisfactory proof of such insurance.

3. If the taxes imposed upon the Collateral, rent due on the premises where the Collateral is or may be kept or garaged, or insurance premiums on the Collateral are not paid when due, the Lender may make such payments, at its option, and add the same to the Indebtedness secured hereby with said advances to accrue interest at the above rate.

4. This Agreement covers any and all replacement Collateral acquired by Debtor. Debtor will, upon acquisition of any such replacement Collateral, promptly certify Lender of such acquisition, stating the nature, description, source, cost and terms of acquisition thereof, and at his own expense, furnish the Lender such information and documentation with respect thereto as may be requested by Lender.

5. Debtor shall allow Lender, by or through any of its agents, officers, employees or attorneys, to examine and inspect the Collateral wherever located and all books, records and documentation with respect thereto, and to make such copies or extracts from such books, records and documentation as Lender may deem to be desirable.

6. Lender may make demand upon Debtor at any time for any reason, including but not limited to the following events or conditions: (a) the loss, theft, substantial damage, destruction, sale, disposition or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or hereon; (b) decreasing of Debtor's regular business operations; (c) any Obligor (which term shall mean each Debtor and each other person or party in any manner on debt secured hereby) becomes insolvent, or is unable to pay debts as they mature, or makes an assignment for benefit of creditors or has a petition under any bankruptcy or state insolvency law filed for or against him, or dies, or, in the case of a corporation or partnership is involved in dissolution, merger or consolidation action; (d) a breach of the terms of this Note and Agreement; or (e) if the prospect of payment, performance or realization of Collateral hereunder is significantly impaired. Should the holder hereof accept any part payment or otherwise grant indulgence to any party hereto this shall not alter or affect the holder's rights hereunder with respect to any subsequent payment or default. This Note may be repaid in full at any time without penalty.

7. In the event of a demand by Lender, Lender shall have and may exercise any and all rights and remedies provided under the Uniform Commercial Code of this State and under any other applicable law. Upon demand, and at the request of the Lender, Debtor shall assemble the Collateral, making it available for inspection and sale, at a convenient place designated by Lender. If required by law, Lender will give notice to Debtor of any intended disposition of the Collateral, the requirements of notice being met by the Lender mailing, postage prepaid, such notice to Debtor at Debtor's last known address at least five (5) days prior to such disposition. Upon such disposition, the proceeds thereof shall be applied to the expenses of retaking, holding, preparing for disposition, costs of disposition including reasonable legal fees, and then to the indebtedness hereby secured. Lender will account to Debtor for any surplus, and the maker of the Note shall be and remain liable for any deficiency. The remedies provided for herein shall be cumulative and the Lender may select its remedies and specifically assert its remedies against the Collateral and/or the maker of the Note and/or its guarantors and/or endorsers at the Lender, at its option, sees fit.

8. Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms thereof, notwithstanding any conduct or custom on its part in refraining from so doing at any time. No waiver or omission to act by Lender shall operate as a waiver of any other default or of the same default at a future time, and no single or partial exercise by Lender of any right or remedy shall preclude any other or future exercise of that or any other right or remedy. The provisions, rights and remedies herein are cumulative and concurrent to and with those of all other agreements and documents held by Lender in connection with the indebtedness herein described. Time is of the essence of this Agreement.

9. The term "Debtor" as used herein shall include all parties signing this Agreement and each of them, and such parties shall be jointly and severally obligated and liable hereunder. The singular pronoun, when used herein, shall include the plural. All rights of Lender shall inure to the benefit of its successors and assigns; all obligations of Debtor shall bind his heirs, executors, administrators, successors and assigns.

10. If "Debtor" should terminate his contract with Canal Wood LLC, cease doing business with Canal Wood LLC, or if the two contracted crews initiate a contract with another party to harvest wood for them, the note shall be due in full at that time. The balance of the note shall be paid in full within 24 (twenty-four) hours or the note will be in default. Should "Debtor" be in default of said note, Canal Wood LLC shall have the right to take possession of all collateral assigned to this note agreement. This location of collateral and the collateral shall be given willingly to Canal Wood LLC.

11. In the event that the collateral is not willingly given to Canal Wood LLC and any and all expenses incurred in locating and collecting collateral shall be paid to Canal Wood LLC. Also, if said collateral is in disrepair, any and all expenses incurred repairing collateral to standard operating condition shall be also due to Canal Wood LLC. This is to include any legal expenses incurred in locating, seizing, storing, and repairing equipment, and any legal expenses incurred in collecting monies owed to Canal Wood LLC.

### DEBTOR ACKNOWLEDGMENT

Debtor acknowledges that Lender has made no other commitment to loan money, extend credit or forbear from enforcing repayment of any debt or to extend or renew any debt. To protect all parties from misunderstanding or disappointment, any agreements between these parties covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement, except as we may later agree in writing to modify it or enter into separate agreements, wholly in writing and duly signed by all parties. No oral or implied agreements between the parties shall be enforceable and any change or amendment to agreements between the parties must be in writing.

IN WITNESS WHEREOF, the Debtor has set his hand and seal the day and year set above.

In the Presence of: (Witness)                    Signature(s) of Debtor(s)
                                                 Sammy C. Mills, III, Mills Forestry Service, LLC.

~ Docs 5132085.01 ~

44-GA

Canal Loan Caculator

MILLS FORESTRY

| Loan Amount | $ 100,000.00 |
| Annual Interest Rate | 12.00% |
| # of Payments | 54 |
| Start Date | 6/14/2019 |

| Number | Pmt Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 1 | 06/14/19 | $ 1,971.77 | $ 230.77 | $ 1,741.00 | $ 98,259.00 |
| 2 | 06/21/19 | $ 1,971.77 | $ 226.75 | $ 1,745.01 | $ 96,513.99 |
| 3 | 06/28/19 | $ 1,971.77 | $ 222.72 | $ 1,749.04 | $ 94,764.95 |
| 4 | 07/05/19 | $ 1,971.77 | $ 218.69 | $ 1,753.08 | $ 93,011.87 |
| 5 | 07/12/19 | $ 1,971.77 | $ 214.64 | $ 1,757.12 | $ 91,254.75 |
| 6 | 07/19/19 | $ 1,971.77 | $ 210.59 | $ 1,761.18 | $ 89,493.57 |
| 7 | 07/26/19 | $ 1,571.77 | $ 206.52 | $ 1,765.24 | $ 87,728.33 |
| 8 | 08/02/19 | $ 1,971.77 | $ 202.45 | $ 1,769.31 | $ 85,959.01 |
| 9 | 08/09/19 | $ 1,971.77 | $ 198.37 | $ 1,773.40 | $ 84,185.62 |
| 10 | 08/16/19 | $ 1,971.77 | $ 194.27 | $ 1,777.49 | $ 82,408.12 |
| 11 | 08/23/19 | $ 1,971.77 | $ 190.17 | $ 1,781.59 | $ 80,626.53 |
| 12 | 08/30/19 | $ 1,971.77 | $ 186.06 | $ 1,785.70 | $ 78,840.83 |
| 13 | 09/06/19 | $ 1,971.77 | $ 181.94 | $ 1,789.83 | $ 77,051.00 |
| 14 | 09/13/19 | $ 1,971.77 | $ 177.81 | $ 1,793.96 | $ 75,257.05 |
| 15 | 09/20/19 | $ 1,971.77 | $ 173.67 | $ 1,798.10 | $ 73,458.95 |
| 16 | 09/27/19 | $ 1,971.77 | $ 169.52 | $ 1,802.24 | $ 71,656.71 |
| 17 | 10/04/19 | $ 1,971.77 | $ 165.36 | $ 1,800.40 | $ 69,850.30 |
| 18 | 10/11/19 | $ 1,971.77 | $ 161.19 | $ 1,810.57 | $ 68,039.75 |
| 19 | 10/18/19 | $ 1,971.77 | $ 157.01 | $ 1,814.75 | $ 66,224.98 |
| 20 | 10/25/19 | $ 1,971.77 | $ 152.83 | $ 1,818.94 | $ 64,406.04 |
| 21 | 11/01/19 | $ 1,971.77 | $ 148.63 | $ 1,823.14 | $ 62,582.91 |
| 22 | 11/08/19 | $ 1,971.77 | $ 144.42 | $ 1,827.34 | $ 60,755.56 |
| 23 | 11/15/19 | $ 1,971.77 | $ 140.21 | $ 1,831.56 | $ 58,924.00 |
| 24 | 11/22/19 | $ 1,971.77 | $ 135.98 | $ 1,835.79 | $ 57,088.21 |
| 25 | 11/29/19 | $ 1,971.77 | $ 131.74 | $ 1,840.02 | $ 55,248.19 |
| 26 | 12/06/19 | $ 1,971.77 | $ 127.50 | $ 1,844.27 | $ 53,403.92 |
| 27 | 12/13/19 | $ 1,971.77 | $ 123.24 | $ 1,848.53 | $ 51,555.40 |
| 28 | 12/20/19 | $ 1,971.77 | $ 118.97 | $ 1,852.79 | $ 49,702.60 |
| 29 | 12/27/19 | $ 1,971.77 | $ 114.70 | $ 1,857.07 | $ 47,845.54 |
| 30 | 01/03/20 | $ 1,971.77 | $ 110.41 | $ 1,861.35 | $ 45,984.18 |
| 31 | 01/10/20 | $ 1,971.77 | $ 103.12 | $ 1,865.65 | $ 44,118.54 |
| 32 | 01/17/20 | $ 1,971.77 | $ 101.81 | $ 1,869.95 | $ 42,248.58 |
| 33 | 01/24/20 | $ 1,971.77 | $ 97.50 | $ 1,874.27 | $ 40,374.31 |
| 34 | 01/31/20 | $ 1,971.77 | $ 93.17 | $ 1,878.59 | $ 38,495.72 |
| 35 | 02/07/20 | $ 1,971.77 | $ 88.84 | $ 1,882.93 | $ 36,612.79 |
| 36 | 02/14/20 | $ 1,971.77 | $ 84.48 | $ 1,887.27 | $ 34,725.52 |
| 37 | 02/21/20 | $ 1,971.77 | $ 80.14 | $ 1,891.63 | $ 32,833.89 |
| 38 | 02/28/20 | $ 1,971.77 | $ 76.77 | $ 1,895.99 | $ 30,937.90 |
| 39 | 03/06/20 | $ 1,971.77 | $ 71.40 | $ 1,900.37 | $ 26,037.52 |
| 40 | 03/13/20 | $ 1,971.77 | $ 67.01 | $ 1,904.75 | $ 27,132.77 |
| 41 | 03/20/20 | $ 1,971.77 | $ 62.61 | $ 1,909.15 | $ 25,223.61 |
| 42 | 03/27/20 | $ 1,971.77 | $ 58.21 | $ 1,913.56 | $ 23,310.05 |
| 43 | 04/03/20 | $ 1,971.77 | $ 53.79 | $ 1,917.97 | $ 21,392.08 |
| 44 | 04/10/20 | $ 1,971.77 | $ 49.37 | $ 1,922.40 | $ 19,469.69 |
| 45 | 04/17/20 | $ 1,971.77 | $ 44.93 | $ 1,926.84 | $ 17,542.86 |
| 46 | 04/24/20 | $ 1,971.77 | $ 40.49 | $ 1,931.28 | $ 15,611.57 |
| 47 | 05/01/20 | $ 1,971.77 | $ 36.03 | $ 1,936.74 | $ 13,675.83 |
| 48 | 05/08/20 | $ 1,971.77 | $ 31.58 | $ 1,940.21 | $ 11,735.62 |
| 49 | 05/15/20 | $ 1,971.77 | $ 27.08 | $ 1,944.88 | $ 9,790.94 |
| 50 | 05/22/20 | $ 1,971.77 | $ 22.59 | $ 1,949.17 | $ 7,841.77 |
| 51 | 05/29/20 | $ 1,971.77 | $ 18.10 | $ 1,953.67 | $ 5,888.10 |
| 52 | 06/05/20 | $ 1,971.77 | $ 13.59 | $ 1,958.18 | $ 3,929.92 |
| 53 | 06/12/20 | $ 1,971.77 | $ 9.07 | $ 1,962.70 | $ 1,967.23 |
| 54 | 06/19/20 | $ 1,971.77 | $ 4.54 | $ 1,967.23 | $ 0.00 |

# EXHIBIT "B"

GSCCCA eFiler: EF_003492185_000731525_036  Received:Wednesday, November 13, 2019 8:55:09 AM  Page 1 of 2

FILED & RECORDED
Wednesday, November 13, 2019 9:32:25 AM
File Number: 036-2019-000757
Cindy Mason
Columbia County Clerk of Superior Court

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Brenda H Whitenker        (7066)650-7650

B. E-MAIL CONTACT AT FILER (optional)
brenda.whiteaker@canalwood.net

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Canal Wood LLC
601 North Belair Square
Suite 21
Evans, GA 30809

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Mills Forestry Service LLC | | | |
| OR  1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 235 Cornith Church Road | Adrian | GA | 31002 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| Canal Wood LLC | | | |
| OR  3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 601 North Belair Square, Suite 21 | Evans | GA | 30809 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The collateral includes and debtor hereby grants Lender a security interest in any and all goods, equipment, general intangibles, documents, instruments, chattel paper, accounts and propery of any and every kind, wherever located, now belonging to or hereafter acquired by the Debtor.

2005 John Deere 437 C Loader # WC437C1013006 mounted on a Pitts Trailer w/ CSI Delimber and Hult 54" Grapple

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction   ☐ Manufactured-Home Transaction   ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien   ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor   ☐ Consignee/Consignor   ☐ Seller/Buyer   ☐ Bailee/Bailor   ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Sammy Mills III dba Mills Forestry Service LLC 811311.3

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

COPY

2019 JUL 24  AM 10: 09

036-2019-000518

BMD F MASON CLERK

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Brenda H Whitenker        (706) 650-7650

B. E-MAIL CONTACT AT FILER (optional)
brenda.whitenker@cannlwood.net

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

Canal Wood LLC
601 N Belair Square
Suite 21
Evans, GA  30809

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Mills Forestry Service LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 235 Cornith Church Rd | Adrian | GA | 31002 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| | | | | |
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Canal Wood LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 601 N Belair Square, Suite 21 | Evans | GA | 30809 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

The collateral includes and debtor hereby grants Lender a security interest in any and all goods, equipment, general intangibles, documents, instruments, chattel paper, accounts and property of any and every kind, wherever located, now belonging to or hereafter acquired by the Debtor.

2010 John Deere Bulldozer, Model 750C, S/N 716859

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box:
☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Sammy Mills III dba Mills Forestry Service LLC 811311.2

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

**UCC FINANCING STATEMENT**
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Brenda H Whiteaker          (706) 650-7650

B. E-MAIL CONTACT AT FILER (optional)
bhwhiteaker@hotmail.com

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

┌                                              ┐
  Canal Wood LLC
  601 N Belair Square
  Suite 21
  Evans, GA 30809
└                                              ┘

2019 JUN 10  AM 10:40

036-2019-000418

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Mills Forestry Service LLC | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 235 Cornith Church Rd | Adrian | GA | 31002 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Canal Wood LLC | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 601 N Belair Square, Suite 21 | Evans | GA | 30809 | USA |

4. COLLATERAL: This financing statement covers the following collateral:

The collateral includes and debtor hereby grants Lender a security interest in any and all goods, equipment, general intangibles, documents, instruments, chattel paper, accounts and property of any and every kind, wherever located, now belonging to or hereafter acquired by the Debtor.

Tigercat 630C Skidder, S/N 6302519
2008 John Deere 643J Fellerbuncher, S/N 621572.

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)   ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:                         6b. Check only if applicable and check only one box:
☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility    ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Sammy Mills III dba Mills Forestry Service LLC  811311.1

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

COPY

2019 MAY 22  AM 10: 58

036-2019- 000377
BOOK      PAGE
CINDY MASON, CLERK

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Brenda H Whiteaker        (706) 650-7650

B. E-MAIL CONTACT AT FILER (optional)
bhwhiteaker@canalwood.net

C. SEND ACKNOWLEDGMENT TO:  (Name and Address)

Canal Wood LLC
601 N Belair Square
Suite 21
Evans, GA 30809

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Mills Forestry Service LLC | | | | |
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 235 Cornith Church Rd | Adrian | GA | 31002 | USA |

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Canal Wood LLC | | | | |
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |
| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
| 601 N Belair Square, Suite 21 | Evans | GA | 30809 | USA |

4. COLLATERAL: This financing statement covers the following collateral:
The collateral includes and debtor hereby grants Lender a security interest in any and all goods, equipment, general intangibles, documents, instruments, chattel paper, accounts and property of any and every kind, wherever located, now belonging to or hereafter acquired by the Debtor.

John Deere 6210 Tractor, S/N LO621OM246904
1997 John Deere Bulldozer 650G, S/N TO650GW828899
Ford 5610 Tractor, S/N BD23448
1999 John Deere 650G Bulldozer, S/N TO650GW804217
1984 John Deere Motor Grader 570, S/N 000306U

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions)  ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box:  ☐ Public-Finance Transaction  ☐ Manufactured-Home Transaction  ☐ A Debtor is a Transmitting Utility        6b. Check only if applicable and check only one box:  ☐ Agricultural Lien  ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable):  ☐ Lessee/Lessor  ☐ Consignee/Consignor  ☐ Seller/Buyer  ☐ Bailee/Bailor  ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA:
Sammy Mills III dba Mills Forestry Service LLC   8113.11

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

# EXHIBIT "C"

## CANAL WOOD LLC WEST
## BUSINESS LOAN, PROMISSORY NOTE AND SECURITY AGREEMENT

Amount of Loan: $ 58,099.39          Date: March 2, 2020

Loan Administrator  Brenda H. Whiteaker

FOR VALUE RECEIVED, the undersigned maker (hereinafter referred to as "Debtor") (if more than one, jointly and severally), promise(s) to pay to the order of Canal Wood LLC (hereinafter together with any holder or assignee hereof called "Lender"), on demand at Evans, GA (City, State), the amount of $ 58,099.39, together with interest thereon from the date of the note ("Note"), as hereinafter provided on a per annum basis without compounding, calculated on the basis of the actual number of days elapsed over a year of 360 days, at the rate of  12.0  percent (or, if this percent is determined invalid for any reason, then the highest rate allowable by law).

Until demand is made, Debtor agrees to pay said amount in installments of $ 977.54 per week , with the first installment being due on the 6th day of March, 2020, and on the same day of each  week  thereafter, until the full amount is paid with interest at the rate stated above.  Debtor covenants and agrees that this instrument is payable on demand and that the interim installment payments herein agreed upon do not alter or affect Lender's right to demand full payment of all principal and interest and other charges due hereunder at any time.

If this debt is not paid on demand, it will continue to accrue interest at the above rate until paid in full, and Debtor agrees to pay attorneys' fees of 15% of the amount due hereunder if this debt is placed in the hands of an attorney for collection, and to pay all of the cost of collecting this debt and/or realizing on any security interest in connection herewith.

The term Debtor for the purposes of this Note and Security Agreement includes the undersigned and any other person assigning property to Lender as collateral ("Collateral") for this Note.  Debtor hereby grants and assigns to Lender a security interest in the property described below and its proceeds as Collateral for this Note and for any and all other obligations and liabilities of Debtor to Lender, whether due or to become due, direct or contingent, now existing or hereafter arising, and however created or acquired.

### DESCRIPTION OF COLLATERAL

2010 John Deere Bulldozer, Model 750C, S/N 716666

2005 John Deere 437 C Loader # WC437C1013006 Mounted on a Pitts Trailer w/a CSI Delimber and a Hult 54" Grapple

Tigercat 630C Skidder, S/N 6302619

*The collateral includes and Debtor hereby grants Lender a security interest in any and all goods, equipment, general intangibles, documents, instruments, chattel paper, accounts and property of any and every kind, wherever located, now belonging to or hereafter acquired by the Debtor.*

Debtor warrants that the Collateral will be located, or in the case of motor vehicles, garaged at the following address(es) (Debtor's principal place of business):

Debtor warrants that the Collateral is now or will be located at the aforesaid addresses and that the Collateral will not be stored or garaged at another location without written consent of the Lender.  Debtor will notify the Lender in writing of the change in the location of any place of business of the Debtor prior to making such a change and the acquisition of any new place of business prior to such acquisition.  Only by prior written permission of the Lender may the Collateral be kept on or attached to real estate owned by a third party and at the request of the Lender, Debtor will furnish disclaimer or disclaimers, executed by all persons having an interest in such real estate, of all interest in the Collateral.  The Debtor warrants to the Lender that the Debtor owns the Collateral, will not sell it, and has not given anyone else a security interest in the Collateral.  The Debtor agrees to pay all taxes against the Collateral and to keep it in good repair.

If the proceeds of this Note are to be used to purchase the Collateral, the Debtor will immediately use the entire proceeds, together with such additional funds of Debtor as may be necessary, to pay the purchase price of the Collateral described above and for no other purpose.

Each party hereto whether maker, principal, surety, guarantor, endorser, or in any other capacity, hereby waives presentment and demand, notice of dishonor, protest and notice of protest, and agrees that no failure or omission by the Lender upon any default to exercise any right or remedy hereby granted to the Lender shall constitute a waiver by the Lender of the rights to exercise any such right or remedy upon any subsequent default.  Each agrees that any party or security may be released or substituted or reduced by Lender.  The Lender may compromise or receive less than the amount due on any Collateral and may grant any other indulgence to any party without notice to any other party and without affecting his liability.

This agreement shall be governed and construed in accordance with the law of the State of Georgia .  Each party to this agreement submits to the jurisdiction of courts in the State of  Georgia   for purposes of any disputes and matters whatsoever arising under, in connection with, or incidental to this agreement.  The provisions of this agreement are intended to be severable.

1

Upon default, Lender shall have the right to make offset up to the amount owed by Debtor hereunder against any account, deposit or reserve which Debtor may have with Lender.

THE UNDERSIGNED WARRANTS THAT THIS DEBT IS NOT BEING INCURRED FOR PERSONAL, FAMILY OR HOUSEHOLD PURPOSES.

The undersigned has read and received a copy of this Note and Security Agreement, including the Terms and Conditions (appearing on the reverse side or separate page) which are incorporated herein, and, by setting his hand and seal the day and year above set out, agrees to be bound to the Note and Security Agreement and all its Terms and Conditions.

Signature(s) of Debtor(s)                                      Address

Sammy C Mills, III, Mills Forestry Service LLC

_____(SEAL)

### WAIVER OF HEARING PRIOR TO IMMEDIATE POSSESSION

THE UNDERSIGNED HEREBY WAIVES ANY AND ALL RIGHTS TO NOTICE OR A HEARING PRIOR TO SEIZURE OF THE COLLATERAL IN ANY FORECLOSURE, WRIT OF POSSESSION, DETINUE, REPLEVIN, CLAIM AND DELIVERY OR LIKE ACTION INSTITUTED PURSUANT TO THIS NOTE AND SECURITY AGREEMENT, AND RECOGNIZES AND UNDERSTANDS THAT THIS IS A WAIVER OF HEARING PRIOR TO IMMEDIATE POSSESSION.

IN WITNESS WHEREOF, the Debtor has set his hand and seal the day and year above set out.

In the Presence of: (Witness)                          Signature(s) of Debtor(s)
                                                       Sammy C Mills, III, Mills Forestry

Service LLC

_____(SEAL)

This Security Agreement and Waiver of Hearing should be signed by all owners of the Collateral.

Loan No.

2

## TERMS AND CONDITIONS

1.　　The Collateral includes all parts, replacements thereof, attachments, accessories, and equipment now or hereafter installed therein or thereto, including all items of the same nature as the above which are to be purchased with the proceeds of this indebtedness. The Debtor agrees to supply and execute such financing statements, notices, assignments, endorsed certificates of title and such other documentation as may be required by the Lender to perfect the security interest granted herein. Debtor hereby grants to the Lender a power of attorney to execute and file any supplementary documents pertaining to the Collateral described herein as may be required by the Lender to perfect its security interest. Collateral also includes all money and other property now or hereafter held by Lender, on deposit, in reserve, in safekeeping or otherwise for the account of or to the credit of or belonging to Debtor(s), or any of them, in which Debtor(s), or any of them, have any interest, all of which is hereafter termed Collateral.

2.　　The Debtor agrees to keep the Collateral covered by insurance payable and satisfactory to the Lender, to cover any loss or damage and will provide the Lender with satisfactory proof of such insurance.

3.　　If the taxes imposed upon the Collateral, rent due on the premises where the Collateral is or may be kept or garaged, or insurance premiums on the Collateral are not paid when due, the Lender may make such payments, at its option, and add the same to the indebtedness secured hereby with said advances to accrue interest at the above rate.

4.　　This Agreement covers any and all replacement Collateral acquired by Debtor. Debtor will, upon acquisition of any such replacement Collateral, promptly notify Lender of such acquisition, stating the nature, description, source, cost and terms of acquisition thereof, and at its own expense, furnish the Lender such information and documentation with respect thereto as may be requested by Lender.

5.　　Debtor shall allow Lender by or through any of its agents, officers, employees or attorneys, to examine and inspect the Collateral wherever located and all books, records and documentation with respect thereto, and to make such copies or extracts from such books, records, and documentation as Lender may deem to be desirable.

6.　　Lender may make demand upon Debtor at any time for any reason, including but not limited to the following events or conditions: (a) the loss, theft, substantial damage, destruction, sale, disposition or encumbrance to or of any of the Collateral, or the making of any levy, seizure or attachment thereof or hereon; (b) decreasing of Debtor's regular business operation; (c) any Obligor (which term shall mean each Debtor and each other person or party in any manner on debt secured hereby) becomes insolvent, or is unable to pay debts as they mature, or makes an assignment for benefit of creditors or has a petition under any bankruptcy or state insolvency law filed for or against him, or dies, or, in the case of a corporation or partnership is involved in dissolution, merger or consolidation action; (d) a breach of the terms of this Note and Agreement; or (e) if the prospect of payment, performance or realization of Collateral hereunder is significantly impaired. Should the holder hereof accept any part payment or otherwise grant indulgence to any party hereto this shall not alter or offset the holder's rights hereunder with respect to any subsequent payment or default. This Note may be repaid in full at any time without penalty.

7.　　In the event of a demand by Lender, Lender shall have and may exercise any and all rights and remedies provided under the Uniform Commercial Code of this State and under any other applicable law. Upon demand, and at the request of the Lender, Debtor shall assemble the Collateral, making it available for inspection and sale, at a convenient place designated by Lender. If required by law, Lender will give notice to Debtor of any intended disposition of the Collateral, the requirements of notice being met by the Lender mailing, postage prepaid, such notice to Debtor at Debtor's last known address at least five (5) days prior to such disposition. Upon such disposition, the proceeds thereof shall be applied to the expenses of retaking, holding, preparing for disposition, costs of disposition including reasonable legal fees, and then to the indebtedness hereby secured. Lender will account to Debtor for any surplus, and the maker of the Note shall be and remain liable for any deficiency. The remedies provided for herein shall be cumulative and the Lender may select its remedies and specifically assert its remedies against the Collateral and/or the maker of the Note and/or its guarantors and/or endorsers as the Lender, at its option, sees fit.

8.　　Lender shall have the right at all times to enforce the provisions of this Agreement in strict accordance with the terms thereof, notwithstanding any conduct or custom on its part in refraining from so doing at any time. No waiver or omission to act by Lender shall operate as a waiver of any other default or of the same default at a future time, and no single or partial exercise by Lender of any right or remedy shall preclude any other or future exercise of that or any other right or remedy. The provisions, rights and remedies herein are cumulative and concurrent to and with those of all other agreements, rights and remedies herein are cumulative and concurrent to and with those of all other agreements, rights and remedies herein described. Time is of the essence of this Agreement.

3

9.     The term "Debtor" as used herein shall include all parties signing this Agreement and each of them, and such parties shall be jointly and severally obligated and liable hereunder. The singular pronoun, when used herein, shall include the plural. All rights of Lender shall inure to the benefit of its successors and assigns; all obligations of Debtor shall bind his heirs, executors, administrators, successors and assigns.

10.    If "Debtor" should terminate his contract with Canal Wood LLC, cease doing business with Canal Wood LLC, or if the two contracted crews initiate a contract with another party to harvest wood for them, the note shall be due in full at that time. The balance of the note shall be paid in full within 24 (twenty-four) hours or the note will be in default. Should "Debtor" be in default of said note, Canal Wood LLC shall have the right to take possession of all collateral assigned to this note agreement. This location of collateral and the collateral shall be given willingly to Canal Wood LLC.

11.    In the event that the collateral is not willingly given to Canal Wood LLC, any and all expenses incurred in locating and collecting collateral shall be paid to Canal Wood LLC. Also, if said collateral is in disrepair, any and all expenses incurred repairing collateral to standard operating condition shall be also due to Canal Wood LLC. This is to include any legal expenses incurred in locating, seizing, storing, and repairing equipment, and any legal expenses incurred in collecting monies owed to Canal Wood LLC.

### DEBTOR ACKNOWLEDGMENT

Debtor acknowledges that Lender has made no other commitment to loan money, extend credit or forbear from enforcing repayment of any debt or to extend or renew any debt. To protect all parties from misunderstanding or disappointment, any agreements between these parties covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement, except as we may later agree in writing to modify it or enter into separate agreements, wholly in writing and duly signed by all parties. No oral or implied agreements between the parties shall be enforceable and any change or amendments to agreements between the parties must be in writing.

IN WITNESS WHEREOF, the Debtor has set his hand and seal the day and year set out above.

In the Presence of: (Witness)

Forestry Service LLC

_____ (SEAL)

_____ (SEAL)

~Doc# 51320099

Signature(s) of Debtor(s)

Sammy    C    Mills,    III,    Mills

_____

4

Canal Loan Caculator

| Loan Amount | $ 58,099.39 | | | |
| Annual Interest Rate | 12.00% | | MILLS FORESTRY | |
| # of Payments | 64 | | | |
| Start Date | 3/6/2020 | | | |

| Pmt Number | Date | Payment | Interest | Principal | Balance |
|---|---|---|---|---|---|
| 1 | 03/06/20 | $ 977.54 | $ 134.08 | $ 843.46 | $ 57,255.93 |
| 2 | 03/13/20 | $ 977.54 | $ 132.13 | $ 845.41 | $ 56,410.52 |
| 3 | 03/20/20 | $ 977.54 | $ 130.15 | $ 847.39 | $ 55,563.17 |
| 4 | 03/27/20 | $ 977.54 | $ 128.22 | $ 849.31 | $ 54,713.85 |
| 5 | 04/03/20 | $ 977.54 | $ 126.26 | $ 851.27 | $ 53,862.58 |
| 6 | 04/10/20 | $ 977.54 | $ 124.30 | $ 853.24 | $ 53,009.34 |
| 7 | 04/17/20 | $ 977.54 | $ 122.33 | $ 855.21 | $ 52,154.14 |
| 8 | 04/24/20 | $ 977.54 | $ 120.36 | $ 857.18 | $ 51,296.96 |
| 9 | 05/01/20 | $ 977.54 | $ 118.36 | $ 859.16 | $ 50,437.80 |
| 10 | 05/08/20 | $ 977.54 | $ 116.39 | $ 861.14 | $ 49,576.66 |
| 11 | 05/16/20 | $ 977.54 | $ 114.41 | $ 863.13 | $ 48,713.53 |
| 12 | 05/22/20 | $ 977.54 | $ 112.42 | $ 865.12 | $ 47,848.41 |
| 13 | 05/29/20 | $ 977.54 | $ 110.42 | $ 867.12 | $ 46,981.30 |
| 14 | 06/05/20 | $ 977.54 | $ 108.42 | $ 869.12 | $ 46,112.18 |
| 15 | 06/12/20 | $ 977.54 | $ 106.41 | $ 871.12 | $ 45,241.06 |
| 16 | 06/19/20 | $ 977.54 | $ 104.40 | $ 873.13 | $ 44,367.92 |
| 17 | 06/26/20 | $ 977.54 | $ 102.39 | $ 875.15 | $ 43,492.78 |
| 18 | 07/03/20 | $ 977.54 | $ 100.37 | $ 877.17 | $ 42,615.61 |
| 19 | 07/10/20 | $ 977.54 | $ 98.34 | $ 879.19 | $ 41,736.42 |
| 20 | 07/17/20 | $ 977.54 | $ 96.31 | $ 881.22 | $ 40,855.20 |
| 21 | 07/24/20 | $ 977.54 | $ 94.28 | $ 883.25 | $ 39,971.94 |
| 22 | 07/31/20 | $ 977.54 | $ 92.24 | $ 885.29 | $ 39,086.65 |
| 23 | 08/07/20 | $ 977.54 | $ 90.20 | $ 887.34 | $ 38,199.31 |
| 24 | 08/14/20 | $ 977.54 | $ 88.15 | $ 889.38 | $ 37,309.93 |
| 25 | 08/21/20 | $ 977.54 | $ 86.10 | $ 891.44 | $ 36,418.49 |
| 26 | 08/28/20 | $ 977.54 | $ 84.04 | $ 893.49 | $ 35,525.00 |
| 27 | 09/04/20 | $ 977.54 | $ 81.98 | $ 895.55 | $ 34,628.45 |
| 28 | 09/11/20 | $ 977.54 | $ 79.91 | $ 897.62 | $ 33,731.83 |
| 29 | 09/18/20 | $ 977.54 | $ 77.84 | $ 899.69 | $ 32,832.13 |
| 30 | 09/25/20 | $ 977.54 | $ 75.77 | $ 901.77 | $ 31,930.36 |
| 31 | 10/02/20 | $ 977.54 | $ 73.69 | $ 903.85 | $ 31,026.51 |
| 32 | 10/09/20 | $ 977.54 | $ 71.60 | $ 905.94 | $ 30,120.58 |
| 33 | 10/16/20 | $ 977.54 | $ 69.51 | $ 908.03 | $ 29,212.55 |
| 34 | 10/23/20 | $ 977.54 | $ 67.41 | $ 910.12 | $ 28,302.43 |
| 35 | 10/30/20 | $ 977.54 | $ 65.31 | $ 912.22 | $ 27,390.21 |
| 36 | 11/00/20 | $ 977.54 | $ 63.21 | $ 914.33 | $ 26,475.89 |
| 37 | 11/13/20 | $ 977.54 | $ 61.10 | $ 916.44 | $ 25,559.44 |
| 38 | 11/20/20 | $ 977.54 | $ 58.98 | $ 918.55 | $ 24,640.89 |
| 39 | 11/27/20 | $ 977.54 | $ 56.86 | $ 920.67 | $ 23,720.22 |
| 40 | 12/04/20 | $ 977.54 | $ 54.74 | $ 922.80 | $ 22,797.42 |
| 41 | 12/11/20 | $ 977.54 | $ 52.61 | $ 924.93 | $ 21,872.50 |
| 42 | 12/16/20 | $ 977.54 | $ 50.47 | $ 927.06 | $ 20,945.44 |
| 43 | 12/25/20 | $ 977.54 | $ 48.34 | $ 929.20 | $ 20,016.24 |
| 44 | 01/01/21 | $ 977.54 | $ 46.19 | $ 931.34 | $ 19,084.89 |
| 45 | 01/08/21 | $ 977.54 | $ 44.04 | $ 933.49 | $ 18,151.40 |
| 46 | 01/15/21 | $ 977.54 | $ 41.89 | $ 935.05 | $ 17,215.75 |
| 47 | 01/22/21 | $ 977.54 | $ 39.73 | $ 937.81 | $ 16,277.94 |
| 48 | 01/29/21 | $ 977.54 | $ 37.56 | $ 939.97 | $ 15,337.07 |
| 49 | 02/05/21 | $ 977.54 | $ 35.40 | $ 942.14 | $ 14,395.83 |
| 50 | 02/12/21 | $ 977.54 | $ 33.22 | $ 944.31 | $ 13,451.52 |
| 51 | 02/19/21 | $ 977.54 | $ 31.04 | $ 946.49 | $ 12,505.03 |
| 52 | 02/26/21 | $ 977.54 | $ 28.86 | $ 948.68 | $ 11,556.35 |
| 53 | 03/05/21 | $ 977.54 | $ 26.67 | $ 950.87 | $ 10,605.48 |
| 54 | 03/12/21 | $ 977.54 | $ 24.47 | $ 953.06 | $ 9,652.42 |
| 55 | 03/19/21 | $ 977.54 | $ 22.27 | $ 955.26 | $ 8,697.16 |
| 56 | 03/26/21 | $ 977.54 | $ 20.07 | $ 957.47 | $ 7,739.69 |
| 57 | 04/02/21 | $ 977.54 | $ 17.86 | $ 959.67 | $ 6,780.02 |
| 58 | 04/09/21 | $ 977.54 | $ 15.65 | $ 961.89 | $ 5,818.13 |
| 59 | 04/16/21 | $ 977.54 | $ 13.43 | $ 964.11 | $ 4,854.02 |
| 60 | 04/23/21 | $ 977.54 | $ 11.20 | $ 966.33 | $ 3,887.69 |
| 61 | 04/30/21 | $ 977.54 | $ 8.97 | $ 968.56 | $ 2,919.12 |
| 62 | 05/07/21 | $ 977.54 | $ 6.74 | $ 970.80 | $ 1,948.32 |
| 63 | 05/14/21 | $ 977.54 | $ 4.50 | $ 973.04 | $ 975.28 |
| 64 | 05/21/21 | $ 977.54 | $ 2.25 | $ 975.28 | $ 0.00 |